# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| MELBORNE R. SHEPHERD, | : | |
| Plaintiff, | : | |
| vs. | : | CA 16-00117-C |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,1 | : : : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Melborne R. Shepherd brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security (the "Commissioner") denying his applications for a period of disability ("PoD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")).

Upon consideration of the briefs of the parties, (Docs. 9 & 15), and the administrative record, (Doc. 8), (hereinafter cited as "(R. [page number(s) in

---

1 Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), FED. R. CIV. P., Berryhill is substituted for Carolyn W. Colvin as the proper defendant in this case.

lower-right corner of transcript])"), it is determined that the Commissioner's decision is due to be **AFFIRMED**.

I. <u>Background</u>

Shepherd was born on June 15, 1954. (R. 169 [SSA Ex. 1E]). The highest grade of school Shepherd attained was twelfth grade. (R. 174 [SSA Ex. 2E]). Shepherd worked as a pumper from 1977 to 1999, handyman and farm operator from 2000 to 2002, bander operator from 2003 to 2005, and facilities maintenance supervisor from 2006 to 2010. (R. 181 [SSA Ex. 4E]).

Shepherd filed applications for a PoD and DIB with the Social Security Administration (the "SSA"),2 alleging disability beginning October 15, 20103. (R. 19). After Shepherd's claim was denied, he requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on April 16, 2014. (R. 19). On August 25, 2014, the ALJ issued an unfavorable decision on Shepherd's claim, finding him "not disabled" under sections 216(i) and 223(d) of the Social Security Act. (R. 16-28).

Shepherd requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review. (R. 7-8). The Appeals Council denied Shepherd's request for review on February 2, 2016, which made the ALJ's the final decision of the Commissioner. (R. 1-6). On

---

2 "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. 423." Sanders v. Astrue, No 11-049-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

3 "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured. 42 U.S.C. § 423(a)(1)(A) (2005)." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

March 17, 2016, Shepherd filed this action pursuant to § 405(g)4 and § 1382(c)(3)5 to review the final decision of the Commissioner. (Doc. 1).

## II. Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotations omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (citations omitted). "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); and *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "Yet, within this narrowly circumscribed role, [the Court does] not 'act as automatons.'" *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982)). The Court "must scrutinize the record as a whole, [*Ware*, 651 F.2d at 411]; *Lewis v. Weinberger*, 515 F.2d 584, 586-87 (5th Cir. 1975), to determine if the decision

---

4 "Any individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow." 42 U.S.C. § 405(g).

3

reached is reasonable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), and supported by substantial evidence, *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)." *Bloodsworth*, 703 F.2d at 1239.

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards are not presumed valid." *Martin*, 894 F.2d at 1529 (citing *MacGregor*, 786 F.2d at 1053; *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981). "The [Commissioner's] failure to apply the correct legal standard or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986); *Bowel v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984); *Smith*, 707 F.2d at 1285; *Wiggins*, 679 F.2d at 1389; *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, at 1237-39 (11th Cir. 2004)).

### III. Claims on Judicial Review

4

1. "The [ALJ] committed reversible error by giving 'significant weight' to the opinion of a non-acceptable non-medical source in determining [Shepherd's RFC] and by disregarding the opinions of [Shepherd's] treating physician." (Doc. 9, at 2).

## IV. Analysis

"At the first step, the ALJ must consider the claimant's current working situation. If the claimant is 'doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.'" *Phillips*, 357 F.3d at 1237 (alterations in original) (quoting 20 C.F.R. § 404.1520(a)(4)(i) & (b). "If however, the claimant is not currently 'doing gainful activity' then the ALJ moves on to the second step." *Phillips*, 357 F.3d at 1237. At the first step, the ALJ determined that Shepherd had "not engaged in substantial gainful activity since October 15, 2010, the alleged onset date." (R. 21).

> At the second step, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." 20 C.F.R. § 404.1520(c). If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original). At Step Two, the ALJ determined that Shepherd had the following severe impairments: "diabetes mellitus, coronary artery disease, and degenerative disc disease." (R. 21).

> At the third step, the ALJ again considers the "medical severity of [the claimant's] impairment(s)" in order to determine whether the claimant's impairment(s) "meets or equals" one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii). Although the list is too voluminous to recite here, the idea is that the listings

5

"streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 257 F.3d at 1238 (alterations in original). At Step Three, the ALJ found that Shepherd "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. 21).

> At the fourth step, the ALJ must assess: (1) the claimant's [RFC]; and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . 20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (alterations in original) (footnote omitted). At the

fourth step, the ALJ assessed that Shepherd had the RFC "to perform the full range of medium work," (R. 22), and "is capable of performing past relevant work as maintenance supervisor [ ], a bander operator [ ], a handyman [ ], and a pumper [ ]," (R. 24). Therefore, the ALJ concluded Shepherd "has not been under a disability, as defined in the Social Security Act, from October 15, 2010, through the date of [the ALJ's] decision." (R. 24).

### A. Claim 1

A claimant's "RFC is an assessment of a claimant's remaining ability to do work despite his impairments." *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 870-71 (11th Cir. 2012) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* SSR 96-8p, 1996 WL 374184, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). "RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis . . . . RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original) (internal footnote and footnote omitted). An ALJ makes an RFC finding based on "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545.

Evidence considered by the Commissioner in making a disability determination may include medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2). "'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about

7

the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth*, 703 F.2d at 1240; *accord, e.g., Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (per curiam) (unpublished). However, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision

on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted). *Winschel*, 631 F.3d at 1179.

The ALJ assigned "significant weight to the State agency physician who provided a[n RFC] assessment and concluded that [Shepherd] is capable of a full range of medium level work." (R. 23). The ALJ continued:

> Although this physician was non-examining, and therefore this opinion does not as a general matter deserve as much weight as those of examining or treating physicians, this opinion does deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision).

(R. 23-24). However, the "State agency physician" referenced in the ALJ's decision was, in fact, a single decisionmaker ("SDM"), (R. 79 [SSA Ex. 1A]). "[T]he 'SDM' designation connotes no medical credentials." *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (citing 20 C.F.R. § 404.906(a), (b)(2)). "Indeed, the SSA's Program Operations Manuals Systems ('POMS') explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that 'SDM-completed forms are not opinion evidence at the appeals level.'" *Siverio*, 461 F. App'x at 871 (citing POMS

9

§ DI 24510.050, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510050).

Shepherd argues the ALJ committed reversible error by giving significant weight to the opinion of a non-acceptable, non-medical source in determining Shepherd's RFC and by disregarding the opinions of Shepherd's treating physician. (Doc. 9, at 2). However, the Eleventh Circuit Court of Appeals ("Eleventh Circuit"), in *Cooper v. Commissioner of Social Security*, 521 F. App'x 803 (11th Cir. 2013) (per curiam), found harmless an ALJ's reference to an SDM as a doctor and the assignment of weight to the SDM's opinion because the ALJ stated he considered all of the evidence in the record in making his RFC findings. *Id.* at 807; *compare id. with Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 872 (11th Cir. 2012) ("The ALJ mistakenly treated [an SDM's] opinion that Siverio could perform medium work as the 'expert opinion' of a 'DDS physician,' 'State Agency physician,' and 'DDS medical consultant.' This was not a harmless error. The ALJ's opinion shows not only that the ALJ labored under the mistaken belief that [the SDM's] RFC assessment had been authored by a physician, but also that he gave [the SDM's] RFC assessment 'significant weight.' The remaining record evidence does not provide substantial evidence for the finding that Siverio was capable of performing medium work.").

Therefore, the ALJ's reference to the SDM as a doctor and assignment of weight to the SDM's opinion would be harmless error if the record provides substantial evidence for the finding Shepherd was capable of performing a full range of medium level work. *Siverio*, 461 F. App'x at 872. When the ALJ addressed the weight assigned to the SDM's opinion evidence, he stated, ". . . there exist a number of other reasons to reach similar conclusions (as explained

throughout this decision)." (R. 24).

Michael C. Madden, M.D., Ph. D., performed a physical examination of Shepherd on January 2, 2013, at which Dr. Madden measured the range of motion of Shepherd's cervical spine, dorsolumbar spine, hip, knee, ankle, shoulder, elbow and forearm, and wrist. (R. 239-40 [SSA Ex. 3F]). Dr. Madden's measurements were normal for all areas except a measurement of Shepherd's dorsolumbar spine extension that was five degrees less than normal. (R. 239 [SSA Ex. 3F]). From Dr. Madden's physical examination of Shepherd, he found Shepherd's heart rate and rhythm were regular and he did not have murmurs; his lumbar area was mildly tender; straight leg raises from a sitting position were negative, bilaterally; he had normal patellar reflexes; he did not use an assistive device to walk; he did not have diabetic complications; his cranial nerves II-XII were grossly intact; he had a five out of five (5/5) grip strength, bilaterally; he had normal dexterity, bilaterally; he had a normal gait; he was able to walk on his heels; and he was able to walk on his toes; he was able to squat and rise. (R. 242 [SSA Ex. 3F]). Dr. Madden found that an x-ray of Shepherd's lumbosacral spine revealed there were not fractures or dislocations, his vertebral body heights and disc spaces were well maintained, and an endplate osteophyte formation was noted at vertebral body L1 and L2. (R. 243 [SSA Ex. 3F]). Dr. Madden's impression of Shepherd was he had lumbar back pain, type 2 diabetes, and coronary artery disease. (R. 242 [SSA Ex. 3F]). Dr. Madden opined Shepherd's ability to do work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling appeared to be adequate for normal duty. (R. 242 [SSA Ex. 3F]). The ALJ assigned Dr. Madden's opinion "great weight." (R. 23).

In May 2014, Dr. Ritesh Gupta performed a disability examination of Shepherd, which required Dr. Gupta to give his opinion of Shepherd's ability to do, on a regular and continuous basis, work-related activities that included lifting/carrying, sitting/standing/walking, use of hands, use of feet, and postural activities as well give his opinion as to Shepherd's environmental limitations. (R. 265-70 [SSA Ex. 7F]). Dr. Gupta opined Shepherd could lift and carry up to ten (10) pounds, frequently[6]; lift eleven (11) to twenty (20) pounds and twenty-one (21) to fifty (50) pounds, occasionally[7]; and never lift fifty-one (51) to one hundred (100) pounds. (R. 265 [SSA Ex. 7F]). At one time without interruption Shepherd could sit six (6) hours and stand and walk one (1) hour; and in an eight (8) hour work day, Shepherd could sit six (6) hours and stand and walk one (1) hour. (R. 266 [SSA Ex. 7F]). Shepherd, with his right and left hands, could reach overhead, frequently; generally reach, occasionally; handle, occasionally; finger, occasionally; feel, occasionally; and push/pull, occasionally. (R. 267 [SSA Ex. 7F]). With Shepherd's right and left feet, he could operate foot controls, frequently. (R. 267 [SSA Ex. 7F]). Shepherd could frequently climb stairs and ramps, and climb ladders or scaffolds; but could never balance, stoop, kneel, crouch, or crawl. (R. 268 [SSA Ex. 7F]). Dr. Gupta indicated his assessment of Shepherd, and any limitations reflected in the assessment, was supported by a clinical finding of back pain. (R. 268 [SSA Ex. 7F]). As to Shepherd's environmental limitations, Dr. Gupta opined Shepherd could

---

6 "Frequently" is defined "from one-third of the time to two-thirds of the time" with time defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." (R. 265).

7 "Occasionally" is defined "very little to one-third of the time" with time defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." (R. 265).

12

occasionally be exposed to moving mechanical parts; operating a motor vehicle; humidity and wetness; and dust odors, fumes, and pulmonary irritants. Shepherd could never be exposed to unprotected heights, extreme cold, extreme heat, and vibrations. (R. 269 [SSA Ex. 7F]). Based on Shepherd's physical impairments, Dr. Gupta opined Shepherd could perform activities like shopping; travel without a companion for assistance; ambulate without use an assistive device; walk a black at a reasonable pace on rough or uneven surface; use standard public transportation; climb a few steps at a reasonable pace without the use of a single hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and sort handle, or use paper/files. (R. 270 [SSA Ex. 7F]). The ALJ assigned Dr. Gupta's opinion "significant weight." (R. 23).

At Shepherd's hearing before the ALJ, the vocational expert ("VE") stated, based on Dr. Gupta's limitations that he noted from Shepherd's disability examination, Shepherd would be "limited to less than a range of sedentary work and could not perform past work" and "there would be no work available [for Shepherd]." (R. 66). However, in the ALJ's decision, he found Shepherd's "activities of daily living and lack of medical care suggest that he can perform a limited range of medium exertional work." (R. 23).

As to activities of daily living, Shepherd testified he cuts, weekly, his lawn that covers an estimated quarter of an acre, (R. 45; R. 191 [SSA Ex. 5E]); weed-eats his lawn, (R. 60); trims limbs, (R. 60); watches television, (R. 48); retrieves the paper, three times a week, (R. 48); drives himself, approximately once a week, to visit his mother, who lives approximately thirty (30) miles from his residence, (R. 48 & 52); performs light household work for his mother, (R. 53); occasionally performs household repairs at his home, (R. 191 [SSA Ex. 5E]); washes dishes, (R.

51); occasionally washes clothes, (R. 51); attends church twice a week, on Sunday morning and afternoon, (R. 57-58; R. 193 [SSA Ex. 5E]); feeds squirrels in his back yard, (R. 60); and occasionally prepares food or meals, (R. 191 [SSA Ex. 5E]). Additionally, Shepherd indicated he walks as a means of travel8, (R. 192 [SSA Ex. 5E]), and occasionally shops in stores, (R. 192 [SSA Ex. 5E]). Finally, Shepherd indicated he is always able to pay attention, (R. 194 [SSA Ex. 5E]); is excellent at following spoken instructions, (R. 194 [SSA Ex. 5E]); gets along well with authority figures, (R. 195 [SSA Ex. 5E]); has never been fired or laid off from a job because of problems getting along with others, (R. 195 [SSA Ex. 5E]); handles stress, well, (R. 195 [SSA Ex. 5E]); and handles changes in routine, well, (R. 195 [SSA Ex. 5E]).

As to a lack of medical care, Shepherd testified he does not have health insurance, (R. 46); he visits his doctor, F. Martin Lester, M.D., annually, (R. 47); and he refused insulin to treat his diabetes because he could not afford it, but did take Glucovance, (R. 50). Dr. Lester's treatment of Shepherd was limited to medication management. (R. 220-21 [SSA Ex. 1F]; R. 244 [SSA Ex. 4F]; R. 273 [SSA Ex. 8F]). Accordingly, the Court finds the ALJ's reference to the SDM as a doctor and assignment of weight to the SDM's opinion is harmless error since the record provides substantial evidence for the finding Shepherd was capable of performing a full range of medium level work.

Shepherd's second, implied, argument included in Claim 1 is the ALJ committed reversible error by disregarding the opinions of Shepherd's treating physician, (Doc. 9, at 2), which the Court rejects. "A 'treating source' (i.e., a

---

8 Shepherd indicated he can walk fifty (50) yard before he needs to stop and rest and requires fifteen (15) minutes before he can resume walking. (R. 194 [SSA Ex. 5E]).

14

treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].'" *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20 C.F.R. § 404.1502). "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440). That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted); *see also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).

On May 1, 2013, Dr. Lester completed a "Clinical Assessment of Fatigue"

form in regard to Shepherd. (R. 261 [SSA Ex. 5F]). In the form, Dr. Lester opined Shepherd's "[f]atigue is present to such an extent as to be distracting to adequate performance of daily activities or work" and physical activity such as walking or standing "[g]realty increased [Shepherd's] fatigue to such a degree as to cause distraction from tasks or total abandonment of tasks." (R. 261 [SSA Ex. 5F]). Further, Dr. Lester opined Shepherd could not engage in any form of gainful employment on a repetitive, competitive, and product basis over an eight hour work day, forty hours a week, without missing more than two (2) days of work per month or frequent interruptions to his work routine due to his condition and symptoms of his disease. (R. 261 [SSA Ex. 5F]). The ALJ assigned "minimal weight" to Dr. Lester's opinions stated in the form, and he stated he was not required to assign controlling weight to a treating physician's opinions when they are not supported by medically acceptable clinical and laboratory diagnostic techniques, or they are inconsistent with other substantial evidence in the case record. (R. 23).

At Shepherd's April 4, 2012, annual exam, Dr. Lester assessed Shepherd had ischemic heart disease, hyperlipidemia, and diabetes, and he noted Shepherd was stable and having no angina. (R. 219 [SSA Ex. 1F]). From a treadmill stress test, Dr. Lester concluded Shepherd had adequate coronary stress, his exercise capacity for his age was excellent, he was clinically negative for ischemia, and electrocardiographically equivocal for ischemia. (R. 220 [SSA Ex. 1F]).

At Shepherd's April 15, 2013, annual exam, Dr. Lester ordered certain tests to be performed on Shepherd. (R. 260 [SSA Ex. 4F]). Diagnostic testing showed Shepherd's glucose, albumin, cholesterol, triglycerides, LDL, hemoglobin A1c,

and MCH were high, (R. 250, 253, & 255 [SSA Ex. 4F]); and his hematocrit was low, (R. 253 [SSA Ex. 4F]). A treadmill stress test yielded the same results obtained from 2012 except it was noted Shepherd's stress induced blood pressure was normotensive. (R. 245 [SSA Ex. 4F]). A lumbar spine x-ray showed degenerative changes, and a chest x-ray showed no acute chest disease. (R. 258-59 [SSA Ex. 4F]). At Shepherd's April 25, 2013, return visit, Dr. Lester assessed Shepherd's sugar was not good, increased his Glucovance dosage and diabetes medicine, and recommended he continue his regimen for heart and back problems. (R. 244 [SSA Ex. 4F]).

At Shepherd's May 2, 2014, annual exam, Dr. Lester noted "[Shepherd] has medication and he is really doing well with complication of the medicine with postural hypotension" and "[h]e has no angina at all and he feels good." (R. 273 [SSA Ex. 8F]). However, Dr. Lester noted Shepherd's diabetes likely was not under control, despite taking Glucovance three times a day, because he "eats[,] basically[,] what he wants." (R. 273 [SSA Ex. 8F]). Dr. Lester concluded Shepherd "really [was] doing well considering all of his other problems he had before." (R. 273 [SSA Ex. 8F]). Diagnostic tests showed Shepherd's glucose, BUN, cholesterol, triglycerides, and hemoglobin A1c levels were high; and his sodium, anion gap, and HDL levels were low. (R. 274 [SSA Ex. 8F]).

In sum, Dr. Lester's opinions stated in a "Clinical Assessment of Fatigue" form are not supported by his treatment history of Shepherd, which, as stated by the ALJ, was confined to an annual visit, (*see* R. 217-33 [SSA Ex. 1F] (Shepherd's treatment records from Dr. Lester of April 30, 2010, and April 4, 2012, visits); R. 244-60 [SSA Ex. 4F] (Shepherd's treatment records from Dr. Lester of April 15, 2013, visit and 25, 2013, follow-up visit); R. 273-79 [SSA Ex. 8F] (Shepherd's

treatment records from Dr. Lester of May 2, 2014, visit)); confined to medication management, (R. 220-21 [SSA Ex. 1F]; R. 244 [SSA Ex. 4F]; R. 273 [SSA Ex. 8F]); did not include testing to evaluate his back issues, (*see* R. 217-33 [SSA Ex. 1F]; R. 244-60 [SSA Ex. 4F]; R. 273-79 [SSA Ex. 8F]); and did not include treatment for his heart condition (*see* R. 217-33 [SSA Ex. 1F]; R. 244-60 [SSA Ex. 4F]; R. 273-79 [SSA Ex. 8F]). Further, as stated by the ALJ, Dr. Lester's opinions were inconsistent with Shepherd's activities of daily living, (*see* R. 45, 48, 51-53, 57-58, & 60; R. 191-95 [SSA Ex. 5E]; *supra*, pages 13-14), and inconsistent with the other substantial evidence in the case record, (*see* R. 238-43 [SSA Ex. 6F]; *supra*, pages 10-11). Accordingly, the Court finds good cause for the ALJ's decision to assign minimal weight to the opinion of Shepherd's treating physician, Dr. Lester, set forth in a "Clinical Assessment of Fatigue" form, (R. 261 [SSA Ex. 5F]).

Therefore, the Court finds the ALJ's reference to the SDM as a doctor and assignment of weight to the SDM's opinion, (R. 23), is harmless error since the record provides substantial evidence for the finding Shepherd was capable of performing a full range of medium level work; the Court finds good cause for the ALJ's decision to assign minimal weight to the opinion of Shepherd's treating physician, Dr. Lester, set forth in a "Clinical Assessment of Fatigue" form, (R. 261 [SSA Ex. 5F]); and the Court finds the ALJ's reasons for his decision are supported by substantial evidence. Accordingly, the Court **OVERRULES** Shepherd's assertion of error in Claim 1.

## V. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued February 2, 2016, denying Shepherd's applications for PoD and DIB is **AFFIRMED** under 42 U.S.C. § 405(g) and

1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Rule 58, FED. R. CIV. P.

**DONE** and **ORDERED** this the 7th day of July 2017.

                                      s/WILLIAM E. CASSADY
                                      **UNITED STATES MAGISTRATE JUDGE**